CHRISTOPHER G. PARNALL, Respondent, *v.* JOHN FARSON, Appellant.

First Department, January 13, 1922.

Guaranty — partnership — evidence sustaining burden on one holding partnership guaranty to show authority of partner who signed firm name — evidence — proof of fulfilling guaranties similar to one in question allowed.

The burden of proof upon one who holds the guaranty of a partnership to show that the partner who signed the firm name had authority to do so was fully met where the evidence showed that a partnership consisting of the defendant and his father owned a large interest in a certain company; that the firm bought the entire issue of bonds of the company and offered them for sale; that a guaranty of payment of principal and interest by the firm was attached to some of the bonds including those bought by the plaintiff; that the plaintiff bought his bonds from a salesman who stated that the bonds were guaranteed by the firm, said salesman having been authorized by the defendant's father to make this statement; that the partnership issued a circular which set forth that the bonds were unconditionally guaranteed as to payment of principal and interest; that after the death of the defendant's father, the partnership was carried on under the old name by defendant and his brother and they paid interest to the plaintiff on his bonds after examining, on two occasions, the guaranty attached; that defendant's father had told defendant in the

presence of the salesman who sold the bonds that guaranties had been given on some of the bonds; that the defendant would not deny that he had been told of these guaranties by his father or his brother several years before, and that $120,000 of the bonds out of $200,000 guaranteed had been paid by the firm. Both acquiescence and ratification by the defendant were shown by these various facts and circumstances.

It was not erroneous to admit testimony showing that the defendant had paid three-fifths of all the bonds issued with a guaranty, since the defendant was seeking to escape liability on the ground that the guaranty of the entire $200,000 of bonds was unauthorized and there was no attempt to distinguish the bonds in suit from those paid.

APPEAL by the defendant, John Farson, from an order and determination of the Appellate Term of the Supreme Court, entered in the office of the clerk of the county of New York on the 10th day of January, 1921, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, entered in the office of the clerk of said court on the 20th day of April, 1920, in favor of the plaintiff.

*Francis M. Scott* [*Walter H. Pollak* and *Saul S. Myers* of counsel], for the appellant.

*Davis, Wagner, Heater & Holton* [*Charles R. Coulter* of counsel; *Guy C. Heater* with him on the brief], for the respondent.

PAGE, J.:

The action is brought upon a guaranty, alleged to have been given by the firm of which the appellant is the surviving partner, of payment of the principal and interest of a bond of $1,000 issued by the Eden Irrigation and Land Company.

An action upon a similar guaranty issued by the same firm to the First National Bank of Ann Arbor, Mich., resulted in a judgment for the plaintiff, which was affirmed by the Appellate Division, but was reversed and a new trial ordered by the Court of Appeals. (*First National Bank* v. *Farson*, 178 App. Div. 135; 226 N. Y. 218.) The law of this case is settled by that case, and the opinion of the Court of Appeals was before the learned justice of the Municipal Court when he tried the instant case.

The *First National Bank* case held that " when a party

takes a guaranty, to which the partnership name is signed, the burden of proof is on him to show that the partner who signed such name had authority, from one of the legitimate sources, so to do," and stated that there were four sources: (1) Express or actual authorization; (2) implication from the course of business of the same kind generally; (3) implication from the course and conduct of the business as it was actually carried on by the particular partnership; (4) ratification and acquiescence. The trial was upon an agreed statement of facts and certain documentary evidence.

The instant case was fully tried and the evidence adduced very materially amplifies the facts which were under consideration in the *First National Bank* case.

No attempt was made to prove the course of brokerage firms generally. The facts in the case as adduced upon the trial were as follows: On January 1, 1906, John Farson, Sr., and his son John Farson, Jr. (the appellant herein), formed a copartnership under the firm name of Farson, Son & Co., to continue and carry on the business of dealing in stocks and bonds, in which John Farson, Sr., had been engaged for many years. The appellant had one-quarter interest in the business which was given to him by his father. The firm maintained offices in Chicago and New York. The firm or the members thereof owned a large and probably a controlling interest in the Eden Irrigation and Land Company (hereinafter referred to as the Eden Company). The cashier of the firm was the secretary and treasurer of the company, and other employees filled offices as directors or officers of the company. The firm purchased from the Eden Company $700,000 of their bonds, being the entire issue, and offered them for sale to their customers. A salesman of the firm solicited the plaintiff to purchase some of these bonds, stating that the bonds would be guaranteed by Farson, Son & Co. as to payment of principal and interest. The salesman had been duly authorized by John Farson, Sr., to make this offer. Plaintiff had dealt with Farson, Son & Co. before, and knew them to be financially responsible. Relying on this guaranty, the plaintiff bought five bonds of the denomination of $1,000 each. On March 9, 1909, the bonds were delivered to the plaintiff. Attached to each bond was the written guaranty

of Farson, Son & Co. of " prompt payment of both principal and interest " of the bond to which it was attached. The plaintiff paid for the bonds at the rate of ninety-eight cents on the dollar and accrued interest.

John Farson, Sr., died in January, 1910, and the business was continued under the same firm name by his sons John and William, the latter having become a member of the firm July 1, 1909.

The principal and interest on these bonds were payable at the office of Farson, Son & Co. in New York, which was managed by the appellant. The plaintiff collected the interest on these bonds by depositing the coupons of the bonds with his bank, and the same were paid in due course until January 1, 1913.

On December 31, 1912, Farson, Son & Co. notified the plaintiff that the Eden Company was without available funds to pay maturing interest and principal items falling due January 1, 1913, and requested the plaintiff to address any communications to the Chicago office. The plaintiff on January 4, 1913, wrote to the Chicago office of the firm that inasmuch as the five $1,000 bonds held by him were accompanied by the firm's guaranty of prompt payment of principal and interest, he would be pleased to have their remittance at their early convenience. To this Farson, Son & Co. replied requesting plaintiff to forward to them the coupons, either directly or through plaintiff's bank, together with the guaranty, so that they could examine the same. The plaintiff complied with this request, and after examination of the guaranty, the firm, on January 13, 1913, paid the coupons due on January 1, 1913, and returned the guaranty to the plaintiff. In the letter Farson, Son & Co. refer to the guaranty as " repurchase agreements," and in the subsequent correspondence the contract of guaranty is so denominated. The coupons due July 1, 1913, and January 1, 1914, were paid by Farson, Son & Co. The coupons due July 1, 1914, were not paid, and no response was made to a demand for payment. Farson, Son & Co. again asked to have the guaranty forwarded, with which request plaintiff complied; and thereafter the coupons were paid by Farson, Son & Co. until July 1, 1916. When these coupons became due plaintiff wrote to Farson, Son &

Co. demanding payment; to which reply was made from the New York office that " our Mr. John Farson (the defendant) who is in touch with this situation is out of town at the present time but upon his return your letter will be referred to him for attention." Thereafter Farson, Son & Co. wrote that there were ninety days' grace before the coupons became due, and stated further that " We do not consider the present firm of Farson, Son & Company to have any guarantee on the bonds you mention." Plaintiff replied that he had on two occasions sent the guaranty to them for their inspection. On September 30, 1916, plaintiff wrote Farson, Son & Co. at their New York office that the ninety days' grace expired October first, and requested a remittance at an early date, and on October fourth Farson, Son & Co. sent from their New York office a check for the amount due on these coupons to the plaintiff. No further payments have been made.

There was evidence that John Farson, Sr., told his son, in the presence of the salesman who sold these bonds, that guaranties had been given on some of these bonds, and when John Farson, Jr., was asked whether he would deny that he had been informed of these guaranties by his father or his brother as early as October 31, 1908, he replied that he would neither affirm nor deny it. The firm issued a circular in which they set forth in great detail the advantages of the investment in the bonds of the Eden Company, which they owned and offered for sale, and in this circular the first of the " strong points " was stated to be: " 1. The principal and interest of these securities will be unconditionally guaranteed." The salesman testified that he sold the bonds without the guaranty at ninety, but with the guaranty he obtained par. Out of a total issue of $700,000, the firm guaranteed $200,000, and of these all but $80,000 have been paid for by the firm.

In my opinion the knowledge of John Farson, Jr., that these guaranties of the Eden Company bonds were being given, and that he acquiesced therein, can be very readily inferred from the evidence. The guaranties were given to further the business of the firm, and not for the benefit of the Eden Company. The firm named a higher rate for the bonds sold

with a guaranty than for those sold without. Thus it would appear that John Farson, Sr., had actual authority to give the guaranty in the firm name.

However that may be, John Farson, Jr., ratified the act of guaranty, when, after his father's death, the demand was made for the payment of the defaulted coupons, and on two different occasions the guaranties were submitted for examination and payments made by the firm of Farson, Son & Co. These payments were made with exact knowledge of the contents, tenor and effect of the written guaranties. That, in the correspondence, Farson called them repurchase agreements or wrote on the checks " purchase Eden cpns." did not change the character of the instruments, nor the legal effect of the payments pursuant to demand made upon the instruments. But this merely demonstrates a shifty attempt to escape a known liability.

The defendant predicates error on the admission of testimony, showing that the defendant had paid three-fifths of all the bonds issued with a guaranty. Ordinarily a settlement by one party of claims of third persons has no relevancy or materiality in an action. But in this case the defendant was seeking to escape liability on the ground that the guaranty of the entire $200,000 of bonds was unauthorized. In my opinion the fact that the defendant had paid $120,000 of these guaranteed bonds had a very material bearing on the issues in this action. No evidence was given tending to differentiate the bonds in suit from those paid. We have, then, not alone the payment of the coupons on the bonds in suit with full knowledge, and in affirmation, of the guaranty, but also the payment of the principal and interest of three-fifths of all the guaranteed bonds.

Therefore, under the law of the case as laid down by the Court of Appeals in *First National Bank* v. *Farson* (*supra*), the judgment was correctly rendered for the plaintiff, and the determination should be affirmed, with costs.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Determination affirmed, with costs.